UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

JOE McINNES, DIRECTOR, ALABAMA
DEPARTMENT OF TRANSPORTATION,

    Plaintiff,

v.                                                  CASE NO.: 2:09-cv-1034-MEF

REESE & HOWELL, INC.; STATE OF
ALABAMA, ALABAMA DEPARTMENT
OF REVENUE; INTERNAL REVENUE
SERVICE; UNITED STATES FIDELITY &
GUARANTY CO.; DOYLE FULLER,

    Defendants.
_____/

## ANDERSON COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

In accord with this Court's Order dated May 14, 2010, Defendant-Claimant, Anderson Columbia Co., Inc. ("Anderson Columbia") submits this Motion for Summary Judgment and states as follows:

I.    Undisputed Relevant Facts.

Reese & Howell entered into a contract with the Alabama Department of Transportation ("ALDOT") to construct a road in Opp, Covington County, Alabama (the "Project"). Joint Stipulation of Facts, ¶2. Subsequent to entering its contract with ALDOT, Reese & Howell entered into a subcontract with Anderson Columbia for Anderson Columbia to perform Asphalt Paving for the Project. Joint Stipulation of Facts, ¶3.

The Project was delayed over two years due to utility conflicts and realignment of the plans by ALDOT. These delays had a sizeable adverse effect on Anderson Columbia, which is not disputed. See. Joint Stipulation of Facts, ¶¶ 6 and 7. Anderson Columbia prepared a claim that segregated the amount of delay damages suffered by Anderson Columbia because of

ALDOT. This claim was formally submitted by Reese & Howell, along with Reese & Howell's own claim for its own separate damages.

An ALDOT Claims Appeal Board hearing was held to determine the extent of the delay damages suffered by both Reese & Howell and Anderson Columbia. Joint Stipulation of Facts, ¶11. At the hearing, both Reese & Howell and Anderson Columbia presented evidence as to each of their damages. Joint Stipulation of Facts, ¶11. Anderson Columbia utilized its own resources to assert and present its own claim.

In its recommendation, the Claims Appeal Board determined that additional compensation was warranted in the amount of $457,183.51. Joint Stipulation of Facts, ¶12. In awarding this additional compensation, the Claims Appeal Board specifically found that $203,243.95 of the $457,183.51 was for damages Anderson Columbia incurred for having its asphalt plant on the Project longer than anticipated. Joint Stipulation of Facts, ¶13. The Claims Appeal Board recommendation states:

> the Appeals Board recommends additional compensation for the asphalt plant being idle for the 7 months [June, 2000 through November 2000] listed above.

Joint Stipulation of Facts, ¶13. Further, in its "Summary" of recommending additional compensation, the Claims Appeal Board recommended $203,243.95 for the "idle asphalt plant" which had been furnished by Anderson Columbia for the Project. Joint Stipulation of Facts, ¶14.

Thus, the Claims Appeal Board held that a portion of the monies to be paid by ALDOT are purely for the damages Anderson Columbia incurred on the project. In other words, but for the damages attributable to Anderson Columbia, the amount ALDOT would now be paying would be reduced by $203,243.95.

After the administrative award, Reese & Howell sued ALDOT seeking additional damages over and above those recommended by the Claims Appeal Board.[1]  Reese & Howell's additional litigation was unsuccessful. <u>Joint Stipulation of Facts</u>, ¶20.  Thus, the amount owed to Reese & Howell and Anderson Columbia remains what was determined by the Claims Appeal Board.

The Claims Appeal Board expressly found that ALDOT owed an additional $203,243.95 as compensation to Anderson Columbia for damages suffered by Anderson Columbia.  Anderson Columbia has never received the additional compensation awarded to it by the Claims Appeal Board, and those sums have now been deposited with this Court.

II.   <u>Legal Argument: Only Anderson Columbia has Any Legal Rights or Interest in the $203,243.95 that the Claims Appeal Board found to be Due.</u>

   A.   <u>Introduction to Legal Argument.</u>

The Claims Appeal Board found that Anderson Columbia is due to be paid an additional $203,243.95 by ALDOT to compensate Anderson Columbia for damages it suffered.  Due to the privities of the parties, ALDOT's payment would ordinarily be made to Reese & Howell, which <u>must</u> pass the $203,243.95 along to Anderson Columbia. <u>See</u> <u>National American Ins. Co. v. Boh Brothers Constr. Co., Inc.</u>, 700 So. 2d 1363 (Ala. 1997); <u>In re C & C Excavating, Inc.</u>, 288 B.R. 251 (N.D. Ala. 2002).  As will be detailed more fully below, Reese & Howell has no rights to the $203,243.95 and has no property interest in the money owed to Anderson Columbia from ALDOT's coffers. <u>See</u> <u>United Parcel Service, Inc. v. Weben Industries, Inc.</u>, 794 F.2d 1005, 1088 (5th Cir. 1986); <u>C & C Excavating</u>, 288 B.R. at 258; <u>Fidelity and Casualty Co. of New York v. Central Bank of Birmingham</u>, 409 So. 2d 788 (Ala. 1982).  Because Reese & Howell has

---

[1] Anderson Columbia intervened in the original proceedings between Reese & Howell and ALDOT, Case No.: CV-04-2229 to secure its share of the additional compensation owed.

3

no rights or property interest in this $203,243.95, neither can its creditors -- it is axiomatic that creditors of Reese & Howell can stand in no better position vis-a-vis Anderson Columbia, then Reese & Howell itself.

  B.  Relevant Alabama Precedent.

An illustrative authority is C & C Excavating, Inc., where the owner of a pair of construction projects owed its bankrupt general contractor substantial sums. C & C Excavating, 288 B.R. at 251-252. As in the instant case, some of the pending funds were owed to the general contractor to pay it for its own work, and some of the pending funds were ultimately due to be passed through to a subcontractor to pay it for its work. Id. at 253-256. Creditors of the bankrupt general contractor, including the IRS and the bank that issued the construction loan, sought payment of the entirety of the pending funds (including the sums that had been earned by the subcontractor). Id. at 256. The United States Bankruptcy Court for the Northern District of Alabama held that the portion of the money from the owner that had been earned by the subcontractors must be paid to the subcontractors because such funds are not part of the bankruptcy estate. Id. at 262. This holding was premised on the principle that "a bankruptcy estate acquires no greater ownership rights over property than the Debtor would have acquired prior to the bankruptcy filing." Id. at 257. Importantly, because the bankrupt general contractor was always obligated to pass these funds along to its subcontractor, it had no legal or equitable rights of its own over the money earned by the subcontractor. Id. at 257-258.[2] In the instant case,

---

[2]The Court in C & C Excavating relied upon Fidelity and Casualty Company of New York v. Central Bank of Birmingham, 409 So. 2d 788 (Ala. 1982), which it found to be on-point and dispositive. Central Bank stands for the proposition that contract funds that are owed to a lower-tier subcontractor or supplier do not belong to the higher-tier contractor that fails to make appropriate payments downstream. In Central Bank, the surety that cured the default (the failure to make appropriate payments to a subcontractor) stepped into the shoes of the subcontractor it

Reese & Howell has always had the obligation to pass along the $203,243.95 to Anderson Columbia, and it has no legal or equitable rights of its own over this money. Likewise, neither do its creditors.

Another illustrative case is National American Ins. Co. v. Boh Brothers Construction Co., Inc., 700 So. 2d 1363 (Ala. 1997). Like the instant case, Boh Brothers addressed the issue of competing claims to a fund arising from a delay claim resolved through the ALDOT claims process. In Boh Brothers, progress on an ALDOT project was delayed by the unexpected discovery of contaminated soil. Id. at 1364-1365. A subcontractor on the project asserted a delay claim, which was presented by the general contractor to the Alabama Highway Department claims committee. Id. at 1365. Similar to the instant case, the claim that was considered through the ALDOT claims process in Boh Brothers included both the claim of the subcontractor and its subsubcontractor. Id. The cumulative claim was settled for $545,527.44, of which $176,000 was attributable to the subsubcontractor. Id.

The resolution of the matter in Boh Brothers was then complicated when it was discovered that the subcontractor was not qualified to do business in Alabama. Id. at 1365. The subsubcontractor pursued its claim for $176,000 against the surety of the unqualified subcontractor, and the surety paid the claim. Id. The surety then claimed that through equitable subrogation, it inherited the rights of the subsubcontractor it paid, and sought to be reimbursed the $176,000 from the $545,524.44 that ALDOT had previously agreed to pay through the claims process. Id. at 1366. Specifically, the surety contended that if it had not paid the subsubcontractor, that the subsubcontractor "had a right to assert equitable liens and a constructive trust" on $176,000 of the $545,524.44.

---

paid, and was entitled to exert the subcontractor's rights against the defaulting contractor. Id. at 790-791.

The Supreme Court of Alabama agreed with the surety that the subsubcontractor had a right to assert equitable liens and a constructive trust on $176,000 of the $545,524.44 claim funds. Id.  By paying this claim, the surety inherited the subsubcontractor's rights. Id.  The Supreme Court expressly held that the general contractor, upon receipt of the $545,524.44 of claim funds, would have been required to pass down the appropriate portion of the claim that was due to claims of lower tier subcontractors. Id.  The fact that a higher tier subcontractor was unqualified to conduct business was immaterial to the lower tier subcontractor's rights to assert equitable liens and a constructive trust against its portion of the claim fund resolved through the ALDOT claim process.  In the instant case, Anderson Columbia possesses the same rights to recover its $203,243.95 under principles of equitable liens and constructive trust as the Alabama Supreme Court approved in Boh Brothers.

      C.     A Deeper Explanation of the Underpinnings of Anderson Columbia's Rights.

To elucidate, in this context, courts frequently express that a general contractor such as Reese & Howell is a "mere conduit" whose only role is to deliver money due from ALDOT to Anderson Columbia under circumstances where Reese & Howell has no rights or interests of its own in the funds.[3]  By acting as a conduit (due to the privities of the parties), Reese & Howell does not acquire any rights or property interests in the $203,243.95 that it receives from ALDOT and must pass it along to Anderson Columbia.  Rather, a contractor such as Reese & Howell only has a property right in any funds it receives from ALDOT to the extent the funds received exceed

---

[3] See United Parcel, 794 F.2d at 1009; Carrier Corp. v. J. E. Schecter Corp., 347 F.2d 153 (2d Cir. 1965)(subcontractor cannot lose right to sums due because they are to be paid through conduit); In re Tonyan Construction Co., Inc., 28 B.R. 714, 724-725 (N.D. Ill. 1983)(payment by conduit through general contractor cannot hinder subcontractor's right to funds).

valid subcontractor claims (such as Anderson Columbia's Claims Appeal Board approved claim for $203,243.95).[4]

While fundamental fairness is the underpinning of this result, courts have utilized various labels to describe the process of Reese & Howell acting as a conduit.  For example, the funds may be said to be held subject to a "constructive trust" or an "equitable assignment" or an "equitable lien" in favor of Anderson Columbia -- but regardless of the label used, the funds are not subject to claims by any creditors of Reese & Howell.[5]  This result obviously makes sense because, but for the damages suffered by Anderson Columbia, the amount ALDOT would now be paying would be reduced by $203,243.95. Joint Stipulation of Facts, ¶13.  The Claims Appeal Board clearly intended Anderson Columbia to be made whole by the payment of $203,243.95 from ALDOT.  It could not have intended for Reese & Howell (or its creditors) to obtain a windfall.  It would be unfair and inappropriate for these monies to reach any destination other than Anderson Columbia, the party they intended to compensate.

---

[4] See United States v. Durham Lumber Co., 363 U.S. 522 (1960); Aquilino v. United States, 176 N.E.2d 826, 832 (NY 1961); Keenan Pipe & Supply Co. v. B.E. Shields, 241 F.2d 486 (9th Cir. 1956)(recognizing this to be a universal public policy tenet); Fenton Rigging Co., 522 S.W.2d at 863-864 (the portion of contract proceeds paid by owner to general contractor that are to be passed along to a subcontractor does not constitute "accounts receivable" of the general contractor, as the contractor has no rights of its own in such funds).

[5] See United Parcel, 794 F.2d at 1010-1011; Boh Brothers, 700 So. 2d at 1367; Selby v. Ford Motor Company. 590 F.2d 642 (6th Cir. 1979) citing Johnson v. Root Manufacturing Co., 241 U.S. 160 (1916)(recognizing equitable lien of subcontractor in payments from owner); Bethlehem Steel Corp. v. Tidwell, 66 B.R. 932. 937 (M.D. Ga. 1986)(when contractor receives funds, he becomes a trustee of the funds for the purpose of distributing them properly to those who held valid claims); Mickelson v. Aetna Casualty & Surety Co., 452 F.2d 1219, 1225 (8th Cir. 1971)(The bankrupt never had a right of possession.  These funds were held for the benefit of the subcontractor.); Culter-Hammer, Inc. v. Wayne, 101 F.2d 823, 825 (5th Cir. 1939)(Where the owner deposits in the bankruptcy court the unexpended balance of the contract price, it belongs first to the subcontractors that performed labor or supplied materials, and only any remainder constitutes money of the estate.).

An illustrative case from this Federal Circuit addressing these concepts is <u>United Parcel Service, Inc. v. Weben Industries, Inc.</u>, 794 F.2d 1005 (5th Cir. 1986). Weben Industries, Inc. ("Weben") was a general contractor that performed construction work for United Parcel Service, Inc. ("UPS"). <u>Id.</u> at 1010-1011. Weben assigned its accounts receivable to Mercantile Bank (the "Bank"). <u>Id.</u> When Weber failed to stay current on its obligations to the Bank, the Bank demanded that it had a right to be paid construction proceeds from UPS. <u>Id.</u> at 1006-1007. However, the monies to be paid by UPS to Weben included sums that were due to be paid by Weben to its subcontractor, Conveyor, Machinery & Steel Erectors, Inc ("CoMaster"). <u>Id.</u> at 1007. UPS deposited the disputed sums into the registry of the court. <u>Id.</u>

The Fifth Circuit held that the Bank had no right to the funds that were due to be paid to the subcontractor, CoMaster, because not even the general contractor, Weben, had any right to those funds. Under the "construction trust fund doctrine," the general contractor merely acts as a conduit for monies due to be paid from the owner to a subcontractor -- the general contractor itself has no properly interest in such monies. Thus, because the general contractor has no property interest in the money to be paid the subcontractor, it follows that creditors of the general contractor also cannot prevent the subcontractor from receiving its money.

The Fifth Circuit analyzed how courts throughout the country had addressed this context and concluded that while some states had expressly codified the construction trust fund doctrine, the same result was generally reached elsewhere under equitable principles and fairness.[6] The Fifth Circuit explained these cases as sensibly holding that because the general contractor has no

---

[6] <u>Id.</u> *citing* <u>Durham Lumber</u>, 363 U.S. at 525; <u>Keenan Pipe</u>, 241 F.2d at 489; <u>Mickelson</u>, 452 F.2d at 1225; <u>Selby</u>, 590 F.2d at 648; <u>Carrier Corp.</u>, 347 F.2d at 156; <u>Cutler-Hammer</u>, 101 F.2d at 825.

property interest in monies paid by the owner for the subcontractor, creditors of the general contractor similarly have no rights to such funds:

> [T]he court in Fenton emphasized that the owner's obligation to pay the subcontractors effectively removes the money owing to the subcontractors from the general contractor's accounts receivable; since the general contractor has no valid claim to the money, the general contractor's creditors, secured or not, likewise may stake no claim. Id. at 863; see also Aquilino v. United States, 176 N.E.2d 826, 832 (NY 1961)("Our conclusion, then, is that. . . a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid.").

Id. at 1010. Notably, in Aquilino, the Court ruled in favor of a subcontractor, and against a Federal Tax Lien, with regard to monies that had been deposited into the court by the owner. United Parcel, 794 F.2d at 1010; Aquilino, 176 N.E.2d at 282.[7] The instant case is no different -- because Reese & Howell has never had any property interest in the $203,243.95 that is due to be paid to Anderson Columbia, its creditors also have no rights to these funds.

III.    Conclusion.

It is not disputed that Anderson Columbia suffered damages caused by ALDOT in the amount of $203,243.95, and that this sum was properly adjudicated before the ALDOT Claims Appeal Board. The ALDOT has deposited the $203,243.95 into the registry of this Court. By

---

[7]The Fifth Circuit, in United Parcel, also noted that every jurisdiction in the United States has enacted lien statutes and lien rights intended to insure that subcontractors are paid the money to which they are entitled for the performance of their work -- it would make no sense for these well-intentioned and well-established legal principles to be avoided such that subcontractors fail to be paid money to which they are obviously entitled. Id. citing Tonyan Construction, 28 B.R. at 724-725 (purpose of lien statutes and principles of equity and justice compel conclusion that subcontractors should receive money due); Citizens Fidelity Bank & Trust Co. v. Fenton Rigging Co., 522 S.W.2d 862 (Ky.Ct.App. 1975). See also Cutler-Hammer, 101 F.2d at 825 (the purpose of lien statutes in every state is to assure payment to subcontractors, this legislative intent should not be subverted).

any measure of fairness, this sum should be paid to Anderson Columbia, the party that suffered the loss, and the party that this sum was intended to compensate.

Under well established legal principles and under principles of fundamental fairness and common sense, Anderson Columbia is entitled to these funds.

WHEREFORE, Anderson Columbia Co., Inc. asks this Court to award it $203,243.95 from the monies paid into the Court by ALDOT.

>                                Respectfully Submitted,
>
>                                  /s/ Christopher T. McRae

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Electronic Filing to Mr. Jim R. Ippolito, Jr. and Mr. George R. Prescott, Jr., State of Alabama Department of Transportation, 1409 Coliseum Blvd., Montgomery, Alabama 36110, Mr. Jacob Fuller, Law Office of J. Doyle Fuller, 2851 Zelda Road, Montgomery, Alabama 36106, Mr. William E. Farrior, U.S. Department of Justice – Tax Division, P.O. Box 14198, Ben Franklin Station, Washington, DC 20044, Ms. Margaret J. McNeill, State of Alabama Department of Revenue, Post Office Box 32001, Montgomery, Alabama 36132, and Mr. Thomas L. Selden, Starnes & Atchison, LLP, Post Office Box 598512, Birmingham, Alabama 35259, this **1st** day of July, 2010.

    /s/ Christopher T. McRae
Christopher T. McRae
Florida Bar No. 865982
David J. Metcalf
Florida Bar No. 871427
McRae & Metcalf, P.A.
2612 Centennial Place
Tallahassee, Florida 32308
Telephone (850) 386-8000
Facsimile (850) 386-8342

Attorneys for Anderson Columbia Co., Inc.