**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

JOE McINNES,

     Plaintiff,

v.                                          CASE NO.: 2:09-cv-1034-MEF

REESE & HOWELL, INC., *et al.*,

     Defendants.
_____/

**ANDERSON COLUMBIA'S RESPONSE TO**
**J. DOYLE FULLER, PC'S MOTION FOR SUMMARY JUDGMENT**

Anderson Columbia Co., Inc. ("Anderson Columbia") responds to the Motion for Summary Judgment filed by J. Doyle Fuller, PC ("Fuller"), and states:

I.     Introduction.

Fuller has no right to impose an attorney's lien on funds in which his client has no legal or equitable rights. Additionally, Fuller has failed to establish entitlement to the quantum of fees requested.

Anderson Columbia must oppose this Motion because it is overreaching, and seemingly unnecessarily so. The Alabama Department of Transportation has deposited $700,391.01 into the registry of this Court. As detailed more fully below, a portion of this sum, specifically $203,243.95, is legally and equitably owned and due to be paid to Anderson Columbia. The $203,243.95 arises from the Alabama Department of Transportation Claims Appeal Board's award of this sum on Anderson Columbia's idle asphalt plant claim. The remaining $497,147.06 belongs to Reese & Howell Inc. ("Reese & Howell"), or its creditors. Fuller was an attorney for Reese & Howell and is asserting an attorney's lien in his Motion. While the amount sought by Fuller in his Motion is significantly less than $497,147.06, Fuller has quixotically asserted his

right to an attorney's lien over the entire $700,391.06 -- including the amount that belongs to Anderson Columbia -- rather then, as might be appropriate, the lesser amount that is allocated to his client.

Thus, a fundamental flaw of Fuller's overreaching motion arises because Fuller cannot have a lien on funds that never belonged to his client. As will be detailed below, Fuller's client, Reese & Howell could never have any right to the $203,243.95 awarded by the Claims Appeal Board on Anderson Columbia's idle asphalt plant claim. An attorney cannot have a greater right or interest in a fund than his client. This principle is prominently set forth in the Alabama statute that is the basis of Fuller's Motion. Ala.Stat. §34-3-61(b)(attorneys-at-law shall have the same right and power as their clients)(emphasis added).

This issue only arises because Fuller's Motion is overreaching. If Fuller's Motion was appropriately limited to the funds in which his client has an interest, Anderson Columbia would not have cause to complain. As Fuller's Motion seeks a sum that is less than $497,147.06, it is not readily apparent why Fuller is trying to assert a lien against Anderson Columbia's money, rather than limiting his lien to the seemingly sufficient sums allocated to his own client.

A secondary flaw of Fuller's Motion is that it fails to sufficiently establish entitlement to the quantum of fees requested. As will be explained more fully below, a substantial portion of Fuller's efforts were unsuccessful. Additionally, the evidence submitted by Fuller in support of his Motion is incomplete and is insufficient to support an award.

II.     Background Facts.

Reese & Howell entered into a contract with the Alabama Department of Transportation ("ALDOT") to construct a road in Opp, Alabama (the "Project"). Joint Stipulation of Facts, 2. Subsequent to entering its contract with ALDOT, Reese & Howell entered into a subcontract

2

with Anderson Columbia for Anderson Columbia to perform Asphalt Paving for the Project. <u>Joint Stipulation of Facts</u>, 3.  The Project was delayed over two years due to utility conflicts and realignment of the plans by ALDOT.  These delays had a sizeable adverse effect on Anderson Columbia, which is not disputed, as Anderson Columbia's asphalt plant was idle for seven months. <u>See</u>, <u>Joint Stipulation of Facts</u>, 6 and 7.

Anderson Columbia prepared a claim that segregated the amount of delay damages arising from Anderson Columbia's idle asphalt plant and suffered by Anderson Columbia because of ALDOT.  The idle asphalt plant delay claim was incurred by Anderson Columbia alone, and was not shared by Reese & Howell.

Due to the relationship of the parties and procedural formalities, Anderson Columbia's claim was formally submitted by Reese & Howell, along with Reese & Howell's own claim for its own separate damages.  An ALDOT Claims Appeal Board hearing was held to determine the extent of the delay damages suffered by both Reese & Howell <u>and</u> Anderson Columbia. <u>Joint Stipulation of Facts</u>, 11.  At the hearing, both Reese & Howell <u>and</u> Anderson Columbia presented evidence as to each of their damages. <u>Joint Stipulation of Facts</u>, 11.  Anderson Columbia utilized its own resources to assert and present its own idle asphalt plant claim.

The Claims Appeal Board determined that additional compensation was warranted to both Reese & Howell and Anderson Columbia in the total amount of $457,183.51. <u>Joint Stipulation of Facts</u>, 12.  In awarding this additional compensation, the Claims Appeal Board specifically found that $203,243.95 of the $457,183.51 was for damages Anderson Columbia incurred for having its asphalt plant on the Project longer than anticipated. <u>Joint Stipulation of</u>

Facts, 13.[1]   Thus, the Claims Appeal Board held that a portion of the monies to be paid by ALDOT are purely for the damages Anderson Columbia incurred on the project.  In other words, but for the damages sustained by, and to be paid to Anderson Columbia, the amount ALDOT would now be paying would be reduced by $203,243.95.

After the Claims Appeal Board issued its recommendation, Reese & Howell (and its attorney Fuller) fruitlessly sued ALDOT seeking additional damages over and above those recommended by the Claims Appeal Board.  Reese & Howell's additional litigation was entirely unsuccessful and served only to delay payment and resolution of this matter.  See, Joint Statement of Facts, ¶20.

III.    Legal Argument.

The fundamental flaw of Fuller's Motion for Summary Judgment is that Fuller cannot have a right to litigation proceeds when his client never had a right to those litigation proceeds. Reese & Howell, and by extension Fuller, have no rights to the $203,243.95 attributable to Anderson Columbia's idle asphalt plant claim and have no property interest in the money owed to Anderson Columbia from ALDOT's coffers.  See, United Parcel Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005, 1088 (5th Cir. 1986); In re C & C Excavating, Inc., 288 B.R. 251 (N.D. Ala. 2002); Fidelity and Casualty Co. of New York v. Central Bank of Birmingham, 409 So. 2d 788 (Ala. 1982).  Because Reese & Howell has no rights or property interest in this $203,243.95, neither can its attorney -- it is axiomatic that Fuller can stand in no better position vis-a-vis Anderson Columbia, then Reese & Howell itself.  An attorney cannot have a greater

---

[1] The Claims Appeal Board recommendation states, "the Appeals Board recommends additional compensation for the asphalt plant being idle for the 7 months [June, 2000 through November 2000] listed above." Joint Stipulation of Facts, 13.  Further, in its "Summary" of recommending additional compensation, the Claims Appeal Board recommended $203,243.95 for the "idle asphalt plant" which had been furnished by Anderson Columbia for the Project. Joint Stipulation of Facts, 14.

right or power over a judgment then his client.   This principle is prominently set forth in the

Alabama statute that is the basis of Fuller's Motion. Ala.Stat. §34-3-61(b)("attorneys-at-law shall

have the <u>same</u> right and power over action or judgment to enforce their liens as their clients had

or may have.")(emphasis added).

      A.      <u>Relevant Alabama Cases.</u>

An illustrative authority is <u>C & C Excavating, Inc.</u>, where the owner of a pair of

construction projects owed its bankrupt general contractor substantial sums. <u>C & C Excavating</u>,

288 B.R. at 251-252.  As in the instant case, some of the pending funds were owed to the general

contractor to pay it for its own work, and some of the pending funds were ultimately due to be

passed through to a subcontractor to pay it for its work. <u>Id.</u> at 253-256.  Creditors of the bankrupt

general contractor, including the IRS and the bank that issued the construction loan, sought

payment of the entirety of the pending funds (including the sums that had been earned by the

subcontractor). <u>Id.</u> at 256.  The United States Bankruptcy Court for the Northern District of

Alabama held that the portion of the money from the owner that had been earned by the

subcontractors must be paid to the subcontractors because such funds are not part of the

bankruptcy estate. <u>Id.</u> at 262.  This holding was premised on the principle that "a bankruptcy

estate acquires no greater ownership rights over property than the Debtor would have acquired

prior to the bankruptcy filing." <u>Id.</u> at 257.  Importantly, because the bankrupt general contractor

was always obligated to pass these funds along to its subcontractor, it had no legal or equitable

rights of its own over the money earned by the subcontractor. <u>Id.</u> at 257-258.[2]  In the instant case,

---

[2]The Court in <u>C & C Excavating</u> relied upon <u>Fidelity and Casualty Company of New York v. Central Bank of Birmingham</u>, 409 So. 2d 788 (Ala. 1982), which it found to be on-point and dispositive.  <u>Central Bank</u> stands for the proposition that contract funds that are owed to a lower-tier subcontractor or supplier do not belong to the higher-tier contractor that fails to make appropriate payments downstream.  In <u>Central Bank</u>, the surety that cured the default (the failure

Reese & Howell has always had the obligation to pass along the $203,243.95 to Anderson Columbia, and it has no legal or equitable rights of its own over this money.   Likewise, its attorney, Fuller, also has no legal or equitable rights of his own over this money.

Another illustrative case is National American Ins. Co. v. Boh Brothers Construction Co., Inc., 700 So. 2d 1363 (Ala. 1997).  Like the instant case, Boh Brothers addressed the issue of competing claims to a fund arising from a delay claim resolved through the ALDOT claims process.   In Boh Brothers, progress on an ALDOT project was delayed by the unexpected discovery of contaminated soil. Id. at 1364-1365.  A subcontractor on the project asserted a delay claim, which was presented by the general contractor to the Alabama Highway Department claims committee. Id. at 1365.  Similar to the instant case, the claim that was considered through the ALDOT claims process in Boh Brothers included both the claim of the subcontractor and its subsubcontractor. Id.  The cumulative claim was settled for $545,527.44, of which $176,000 was attributable to the subsubcontractor. Id.

The resolution of the matter in Boh Brothers was then complicated when it was discovered that the subcontractor was not qualified to do business in Alabama. Id. at 1365.  The subsubcontractor pursued its claim for $176,000 against the surety of the unqualified subcontractor, and the surety paid the claim. Id.  The surety then claimed that through equitable subrogation, it inherited the rights of the subsubcontractor it paid, and sought to be reimbursed the $176,000 from the $545,524.44 that ALDOT had previously agreed to pay through the claims process. Id. at 1366.  Specifically, the surety contended that if it had not paid the

---

to make appropriate payments to a subcontractor) stepped into the shoes of the subcontractor it paid, and was entitled to exert the subcontractor's rights against the defaulting contractor. Id. at 790-191.

subsubcontractor, that the subsubcontractor "had a right to assert equitable liens and a constructive trust" on $176,000 of the $545,524.44.

The Supreme Court of Alabama agreed with the surety that the subsubcontractor had a right to assert equitable liens and a constructive trust on $176,000 of the $545,524.44 claim funds. Id.  By paying this claim, the surety inherited the subsubcontractor's rights. Id.  The Supreme Court expressly held that the general contractor, upon receipt of the $545,524.44 of claim funds, would have been required to pass down the appropriate portion of the claim that was due to claims of lower tier subcontractors. Id.  The fact that a higher tier subcontractor was unqualified to conduct business was immaterial to the lower tier subcontractor's rights to assert equitable liens and a constructive trust against its portion of the claim fund resolved through the ALDOT claim process.  In the instant case, Anderson Columbia possesses the same rights to recover its $203,243.95 under principles of equitable liens and constructive trust as the Alabama Supreme Court approved in Boh Brothers.

B.       The Underpinnings of Anderson Columbia's Rights Defeat Fuller's Claim.

To elucidate, in this context, courts frequently express that a general contractor such as Reese & Howell is a "mere conduit" whose only role is to deliver money due from ALDOT to Anderson Columbia under circumstances where Reese & Howell has no rights or interests of its own in the funds.[3]  By acting as a conduit, Reese & Howell does not acquire any rights or property interests in the $203,243.95 that it receives from ALDOT and must pass it along to

_____

[3]See, United Parcel, 794 F.2d at 1009; Carrier Corp. v. J. E. Schecter Corp., 347 F.2d 153 (2d Cir. 1965)(subcontractor cannot lose right to sums due because they are to be paid through conduit); In re Tonyan Construction Co., Inc., 28 B.R. 714, 724-725 (N.D.Ill. 1983)(payment by conduit through general contractor cannot hinder subcontractor's right to funds).

Anderson Columbia.[4]  Because Reese & Howell does not have any rights or interests in these

funds, Fuller cannot impose an attorney's lien upon them, as Fuller obviously can only lien funds

in which his client has a right or interest.  See, Ala.Stat. §34-3-61(b) (attorney's have same rights

as their clients).

While fundamental fairness is the underpinning of this result, courts have utilized various

labels to describe the process of Reese & Howell acting as a conduit.  For example, the funds

may be said to be held subject to a "constructive trust" or an "equitable assignment" or an

"equitable lien" in favor of Anderson Columbia -- but regardless of the label used, the funds are

not subject to claims by either Reese & Howell itself, or anyone standing in the shoes of Reese &

Howell.[5]

An illustrative case from this Federal Circuit addressing these concepts is United Parcel

Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005 (5th Cir. 1986).  Weben Industries, Inc.

("Weben") was a general contractor that performed construction work for United Parcel Service,

Inc. ("UPS"). Id. at 1010-1011.  Weben assigned its accounts receivable to Mercantile Bank (the

---

[4]See, United States v. Durham Lumber Co., 363 U.S. 522 (1960); Aquilino v. United States, 176 N.E.2d 826, 832 (NY 1961); Keenan Pipe & Supply Co. v. B.E. Shields, 241 F.2d 486 (9th Cir. 1956)(recognizing this to be a universal public policy tenet); Fenton Rigging Co., 522 S.W.2d at 863-864 (the portion of contract proceeds paid by owner to general contractor that are to be passed along to a subcontractor does not constitute "accounts receivable" of the general contractor, as the contractor has no rights of its own in such funds).

[5]See, United Parcel, 794 F.2d at 1010-1011; Boh Brothers, 700 So. 2d at 1367; Selby v. Ford Motor Company, 590 F.2d 642 (6th Cir. 1979) citing Johnson v. Root Manufacturing Co., 241 U.S. 160 (1916)(recognizing equitable lien of subcontractor in payments from owner); Bethlehem Steel Corp. v. Tidwell, 66 B.R. 932. 937 (M.D. Ga. 1986)(when contractor receives funds, he becomes a trustee of the funds for the purpose of distributing them properly to those who held valid claims); Mickelson v. Aetna Casualty & Surety Co., 452 F.2d 1219, 1225 (8th Cir. 1971)(The bankrupt never had a right of possession. These funds were held for the benefit of the subcontractor.); Culter-Hammer, Inc. v. Wayne, 101 F.2d 823, 825 (5th Cir. 1939)(Where the owner deposits in the bankruptcy court the unexpended balance of the contract price, it belongs first to the subcontractors that performed labor or supplied materials, and only any remainder constitutes money of the estate.).

8

"Bank"). Id. When Weber failed to stay current on its obligations to the Bank, the Bank demanded that it had a right to be paid construction proceeds from UPS. Id. at 1006-1007. However, the monies to be paid by UPS to Weben included sums that were due to be paid by Weben to its subcontractor, Conveyor, Machinery & Steel Erectors, Inc ("CoMaster"). Id. at 1007. UPS deposited the disputed sums into the registry of the court. Id.

The Fifth Circuit held that the Bank had no right to the funds that were due to be paid to the subcontractor, CoMaster, because not even the general contractor, Weben, had any right to those funds. Under the "construction trust fund doctrine," the general contractor merely acts as a conduit for monies due to be paid from the owner to a subcontractor -- the general contractor itself has no properly interest in such monies. Thus, because the general contractor has no property interest in the money to be paid the subcontractor, it follows that the attorney for the general contractor cannot assert an attorney's lien either.

The Fifth Circuit analyzed how courts throughout the country had addressed this context and concluded that while some states had expressly codified the construction trust fund doctrine, the same result was generally reached elsewhere under equitable principles and fairness.[6] The Fifth Circuit explained these cases as sensibly holding that because the general contractor has no property interest in monies paid by the owner for the subcontractor, creditors of the general contractor similarly have no rights to such funds:

> [T]he court in Fenton emphasized that the owner's obligation to pay the subcontractors effectively removes the money owing to the subcontractors from the general contractor's accounts receivable; since the general contractor has no valid claim to the money, the general contractor's creditors, secured or not, likewise may stake no claim. Id. at 863; see also Aquilino v. United States, 176 N.E.2d 826, 832 (NY 1961)("Our conclusion, then, is that. . . a contractor does

---

[6]Id. citing Durham Lumber, 363 U.S. at 525; Keenan Pipe, 241 F.2d at 489; Mickelson, 452 F.2d at 1225; Selby, 590 F.2d at 648; Carrier Corp., 347 F.2d at 156; Cutler-Hammer, 101 F.2d at 825.

not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid.").

Id. at 1010.  Notably, in Aquilino, the Court ruled in favor of a subcontractor, and against a Federal Tax Lien, with regard to monies that had been deposited into the court by the owner. United Parcel, 794 F.2d at 1010; Aquilino, 176 N.E.2d at 282.  The instant case is no different -- because Reese & Howell has never had any property interest in the $203,243.95 that is due to be paid to Anderson Columbia, its attorney also has no right to lien these funds.

> C.      Additionally, Fuller has Failed to Establish Entitlement to the Quantum of
>         Fees Requested.

A secondary flaw of Fuller's Motion is that it fails sufficiently to establish entitlement to the quantum of fees requested.  As referenced above, Reese & Howell (and Fuller) were dissatisfied with the award from the ALDOT Claims Board and pursued additional claims by filing a state-court breach of contract action.  From 2004 through 2009, Fuller unsuccessfully pursued these claims, including two mandamus proceedings and one appeal to the Alabama Supreme Court.  It was ultimately determined that all of Reese & Howell's subsequent claims, beyond what was originally awarded by the ALDOT Claims Board, were barred by sovereign immunity.

From his submissions, it appears that virtually all of the fees incurred by Fuller arose from his unsuccessful prosecution of this state-court case from 2004 through 2009.  Specifically, Fuller's evidentially submissions show that the attorney's fees claimed from the inception of this matter through the 2004 ALDOT Claims Board hearing total less than $24,000.  By comparison, according to the bills submitted, approximately $150,000 in fees were apparently incurred in the

10

subsequent years of fruitless and unsuccessful prosecution of additional claims.  Again, these additional efforts did not garner any additional funds.

Fuller's Motion is premised upon the principle that his attorney's fees created the fund on which he asserts his lien. <u>See</u>, <u>CSX Transp. Inc. v. Wettermerle</u>, 644 So. 2d 868 (Ala. 1994). Even under Fuller's own premise, which Anderson Columbia disputes, his Motion still must fail for all but a very small percentage of the fees claimed.  Not only were the overwhelming majority of the fees not incurred in contributing to the fund, but they were not even incurred in the same proceeding. <u>See</u>, <u>Id.</u> *citing* <u>Johnson v. Riddle & Ellis</u>, 85 So. 701 (Ala. 1920).

There also is no evidence as to whether or not the fees incurred prior to the 2004 ALDOT Claims Board hearing were paid or remain due.  From the submissions before the Court, it is not possible to tell whether Fuller was unpaid, at all, for any work incurred as part of the 2004 ALDOT Claims Board process.  Rather, it is only apparent that Fuller may be unpaid for subsequent efforts that were entirely unsuccessful in garnering any additional funds. Specifically, Fuller only contends that in 2005 it became evident that Reese & Howell needed to change to a contingency fee agreement, which was not executed until 2009.  The change to a contingency fee agreement, even under Fuller's version of the facts, did not occur until after the ALDOT Claims Board process was concluded.

IV.     Conclusion.

Fuller has no right to impose an attorney's lien on funds in which his client has no legal or equitable rights -- specifically, the $203,243.95 awarded by the Claims Appeal Board on Anderson Columbia's idle asphalt plant claim.  Moreover, as the amount that Fuller seeks to recover is less than the amount of the fund that is allocated to his client, there seems to be no sensible reason for Fuller to take the overreaching position of trying to impose a lien on

Anderson Columbia's money.  Further, Fuller has failed to establish entitlement to the quantum of fees requested.  Therefore, the Motion should be Denied.

Respectfully Submitted,

  /s/ Christopher T. McRae      

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Electronic Filing to Mr. Jim R. Ippolito, Jr. and Mr. George R. Prescott, Jr., State of Alabama Department of Transportation, 1409 Coliseum Blvd., Montgomery, Alabama 36110, Mr. Jacob A. Fuller and Mr. James Doyle Fuller, Law Office of J. Doyle Fuller, 2851 Zelda Road, Montgomery, Alabama 36106, Mr. William E. Farrior, U.S. Department of Justice – Tax Division, P.O. Box 14198, Ben Franklin Station, Washington, DC 20044, Ms. Margaret J. McNeill, State of Alabama Department of Revenue, Post Office Box 32001, Montgomery, Alabama 36132, Mr. Thomas L. Selden and Ms. Lucile A. Ray, Starnes & Atchison, LLP, Post Office Box 598512, Birmingham, Alabama 35259, this **29th** day of July, 2010.

  /s/ Christopher T. McRae      
Christopher T. McRae
Florida Bar No. 865982
David J. Metcalf
Florida Bar No. 871427
McRae & Metcalf, P.A.
2612 Centennial Place
Tallahassee, Florida 32308
Telephone (850) 386-8000
Facsimile (850) 386-8342

Attorneys for Anderson Columbia Co., Inc.
