UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

JOE McINNES,

    Plaintiff,

v.                                                            CASE NO.: 2:09-cv-1034-MEF

REESE & HOWELL, INC., *et al.*,

    Defendants.
_____/

**ANDERSON COLUMBIA'S RESPONSE TO
USF&G'S MOTION FOR SUMMARY JUDGMENT**

Anderson Columbia Co., Inc. ("Anderson Columbia") responds to the Motion for Summary Judgment filed by United States Fidelity and Guaranty Company ("USF&G"), and states:

I.    Introduction.

USF&G's motion is premised upon the position that it stands in the shoes of Reese & Howell, Inc. ("Reese & Howell") and is therefore entitled to be paid sums that would otherwise belong to Reese & Howell. Specifically, USF&G relies upon an Assignment of Claim whereby Reese & Howell assigned USF&G "all of its right, title, interest, and proceeds in any and all claims. . . it being the intent of this Agreement that all interest of Reese & Howell in said claim is assigned to USF&G." USF&G's Motion, ¶8. USF&G also relies on the principle of equitable subrogation, which it correctly defines to mean that "[w]hen a surety performs its obligations under a. . . bond, it stands in the shoes of the contractor. Thus, if the contractor has the right to the retained funds, the surety accedes to those rights when it meets it obligations under the bonds." USF&G's Motion, p. 7 *quoting* Amwest Surety Ins. Co. v. U.S., 870 F. Supp. 432, 433

(D. Conn. 1994). In short, USF&G contends that, under both legal grounds, it stands in the shoes of Reese & Howell and possesses the rights and interests of Reese & Howell.

The flaw with USF&G's position is that Reese & Howell has never had any rights to the $203,243.95 that the Alabama Department of Transportation Claims Appeal Board determined was due on Anderson Columbia's idle asphalt plant claim. Rather, Reese & Howell is a mere conduit whose only role is to deliver money due from ALDOT to Anderson Columbia. Because Reese & Howell has never had any rights or property interest in this $203,243.95, neither can USF&G, which stands in the shoes of Reese & Howell. The $203,243.95 has always been Anderson Columbia's money, untouchable by Reese & Howell, and therefore, untouchable by USF&G.

II.     Background.

Reese & Howell entered a contract with the Alabama Department of Transportation ("ALDOT") to construct a road in Opp, Alabama (the "Project"). Joint Stipulation of Facts, 2. Subsequent to entering its contract with ALDOT, Reese & Howell entered into a subcontract with Anderson Columbia for Anderson Columbia to perform Asphalt Paving for the Project. Joint Stipulation of Facts, 3.

The Project was delayed over two years due to utility conflicts and realignment of the plans by ALDOT. These delays had a sizeable adverse effect on Anderson Columbia. See, Joint Stipulation of Facts, 6 and 7. Anderson Columbia prepared a claim that segregated the amount of delay damages suffered by Anderson Columbia because of ALDOT. This claim was formally submitted by Reese & Howell, along with Reese & Howell's own claim for its own separate damages. An ALDOT Claims Appeal Board hearing was held to determine the extent of the

delay damages suffered by both Reese & Howell and Anderson Columbia. <u>Joint Stipulation of Facts</u>, 11.

The Claims Appeal Board determined that additional compensation was warranted in the amount of $457,183.51. <u>Joint Stipulation of Facts</u>, 12. In awarding this additional compensation, the Claims Appeal Board specifically found that $203,243.95 of the $457,183.51 was for damages Anderson Columbia incurred for having its asphalt plant on the Project longer than anticipated. <u>Joint Stipulation of Facts</u>, 13.[1] Thus, the Claims Appeal Board held that a portion of the monies to be paid by ALDOT are purely for the damages Anderson Columbia incurred on the project. In other words, but for the damages attributable to Anderson Columbia, the amount ALDOT would now be paying would be reduced by $203,243.95.

After the administrative award, Reese & Howell sued ALDOT seeking additional damages over and above those recommended by the Claims Appeal Board. Reese & Howell's additional litigation was unsuccessful. <u>Joint Stipulation of Facts</u>, 20. Thus, the amount owed to Reese & Howell and Anderson Columbia remains what was determined by the Claims Appeal Board. The Claims Appeal Board expressly found that ALDOT owed an additional $203,243.95 as compensation to Anderson Columbia for damages suffered by Anderson Columbia. Anderson Columbia has never received the additional compensation awarded to it by the Claims Appeal Board, and those sums have now been deposited with this Court.

---

[1] The Claims Appeal Board recommendation states: "the Appeals Board recommends additional compensation for the asphalt plant being idle for the 7 months [June, 2000 through November 2000] listed above." <u>Joint Stipulation of Facts</u>, 13. Further, in its "Summary" of recommending additional compensation, the Claims Appeal Board recommended $203,243.95 for the "idle asphalt plant" which had been furnished by Anderson Columbia for the Project. <u>Joint Stipulation of Facts</u>, 14.

III.  Legal Argument: Only Anderson Columbia, and Not Reese & Howell or USF&G, has Any Legal Rights or Interest in the $203,243.95 that the Claims Appeal Board found to be Due.

The Claims Appeal Board found that Anderson Columbia is due to be paid $203,243.95 by ALDOT to compensate Anderson Columbia for damages it suffered. Due to the privities of the parties, ALDOT's payment would ordinarily be made to Reese & Howell, which must pass the $203,243.95 along to Anderson Columbia. See, National American Ins. Co. v. Boh Brothers Constr. Co., Inc., 700 So. 2d 1363 (Ala. 1997); In re C & C Excavating, Inc., 288 B.R. 251 (N.D. Ala. 2002). As will be detailed more fully below, Reese & Howell has no rights to the $203,243.95 and has no property interest in the money owed to Anderson Columbia from ALDOT's coffers. See, United Parcel Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005, 1088 (5th Cir. 1986); C & C Excavating, 288 B.R. at 258; Fidelity and Casualty Co. of New York v. Central Bank of Birmingham, 409 So. 2d 788 (Ala. 1982). Because Reese & Howell has no rights or property interest in this $203,243.95, USF&G can gain no rights or property interest in this $203,243.95 by standing in the shoes of Reese & Howell. In re Esteves Excavation, Inc., 56 B.R. 802 (D. N.J. 1985); United States v. Munsey Trust Co., 332 U.S. 234 (1947).

In this context, courts frequently express that a general contractor such as Reese & Howell is a "mere conduit" whose only role is to deliver money due from ALDOT to Anderson Columbia under circumstances where Reese & Howell has no rights or interests of its own in the funds.[2] By acting as a conduit (due to the privities of the parties), Reese & Howell does not acquire any rights or property interests in the $203,243.95 that it receives from ALDOT and

---

[2]See, United Parcel, 794 F.2d at 1009; Carrier Corp. v. J. E. Schecter Corp., 347 F.2d 153 (2d Cir. 1965)(subcontractor cannot lose right to sums due because they are to be paid through conduit); In re Tonyan Construction Co., Inc., 28 B.R. 714, 724-725 (N.D. Ill. 1983)(payment by conduit through general contractor cannot hinder subcontractor's right to funds).

4

must pass it along to Anderson Columbia.³  While fundamental fairness is the underpinning of this result, courts have utilized various labels to describe the process of Reese & Howell acting as a conduit.  For example, the funds may be said to be held subject to a "constructive trust" or an "equitable assignment" or an "equitable lien" in favor of Anderson Columbia.⁴

An illustrative authority is C & C Excavating, Inc., where the owner of a pair of construction projects owed its bankrupt general contractor substantial sums. C & C Excavating, 288 B.R. at 251-252.  As in the instant case, some of the pending funds were owed to the general contractor to pay it for its own work, and some of the pending funds were ultimately due to be passed through to a subcontractor to pay it for its work. Id. at 253-256.  Creditors of the bankrupt general contractor, including the IRS and the bank that issued the construction loan, sought payment of the entirety of the pending funds (including the sums that had been earned by the subcontractor). Id. at 256.  The United States Bankruptcy Court for the Northern District of Alabama held that the portion of the money from the owner that had been earned by the subcontractors must be paid to the subcontractors because such funds are not part of the

---

³See, United States v. Durham Lumber Co., 363 U.S. 522 (1960); Aquilino v. United States, 176 N.E.2d 826, 832 (NY 1961); Keenan Pipe & Supply Co. v. B.E. Shields, 241 F.2d 486 (9th Cir. 1956)(recognizing this to be a universal public policy tenet); Fenton Rigging Co., 522 S.W.2d at 863-864 (the portion of contract proceeds paid by owner to general contractor that are to be passed along to a subcontractor does not constitute "accounts receivable" of the general contractor, as the contractor has no rights of its own in such funds).

⁴See, United Parcel, 794 F.2d at 1010-1011; Boh Brothers, 700 So. 2d at 1367; Selby v. Ford Motor Company. 590 F.2d 642 (6th Cir. 1979) citing Johnson v. Root Manufacturing Co., 241 U.S. 160 (1916)(recognizing equitable lien of subcontractor in payments from owner); Bethlehem Steel Corp. v. Tidwell, 66 B.R. 932. 937 (M.D. Ga. 1986)(when contractor receives funds, he becomes a trustee of the funds for the purpose of distributing them properly to those who held valid claims); Mickelson v. Aetna Casualty & Surety Co., 452 F.2d 1219, 1225 (8th Cir. 1971)(The bankrupt never had a right of possession.  These funds were held for the benefit of the subcontractor.); Culter-Hammer, Inc. v. Wayne, 101 F.2d 823, 825 (5th Cir. 1939)(Where the owner deposits in the bankruptcy court the unexpended balance of the contract price, it belongs first to the subcontractors that performed labor or supplied materials, and only any remainder constitutes money of the estate.).

bankruptcy estate. Id. at 262.  This holding was premised on the principle that "a bankruptcy estate acquires no greater ownership rights over property than the Debtor would have acquired prior to the bankruptcy filing." Id. at 257.  Importantly, because the bankrupt general contractor was always obligated to pass these funds along to its subcontractor, it had no legal or equitable rights of its own over the money earned by the subcontractor. Id. at 257-258.[5]  In the instant case, Reese & Howell has always had the obligation to pass along the $203,243.95 to Anderson Columbia, and it has no legal or equitable rights of its own over this money.  Likewise, USF&G, standing in the shoes of Reese & Howell, also has no legal or equitable right over the $203,243.95.

Another illustrative case is National American Ins. Co. v. Boh Brothers Construction Co., Inc., 700 So. 2d 1363 (Ala. 1997).  Like the instant case, Boh Brothers addressed the issue of competing claims to a fund arising from a delay claim resolved through the ALDOT claims process.  In Boh Brothers, progress on an ALDOT project was delayed by the unexpected discovery of contaminated soil. Id. at 1364-1365.  A subcontractor on the project asserted a delay claim, which was presented by the general contractor to the Alabama Highway Department claims committee. Id. at 1365.  Similar to the instant case, the claim that was considered through the ALDOT claims process in Boh Brothers included both the claim of the subcontractor and its subsubcontractor. Id.  The cumulative claim was settled for $545,527.44, of which $176,000 was attributable to the subsubcontractor. Id.

---

[5]The Court in C & C Excavating relied upon Fidelity and Casualty Company of New York v. Central Bank of Birmingham, 409 So. 2d 788 (Ala. 1982), which it found to be on-point and dispositive.  Central Bank stands for the proposition that contract funds that are owed to a lower-tier subcontractor or supplier do not belong to the higher-tier contractor that fails to make appropriate payments downstream.  In Central Bank, the surety that cured the default (the failure to make appropriate payments to a subcontractor) stepped into the shoes of the subcontractor it paid, and was entitled to exert the subcontractor's rights against the defaulting contractor. Id. at 790-791.

The resolution of the matter in Boh Brothers was then complicated when it was discovered that the subcontractor was not qualified to do business in Alabama. Id. at 1365. The subsubcontractor pursued its claim for $176,000 against the surety of the unqualified subcontractor, and the surety paid the claim. Id. The surety then claimed that through equitable subrogation, it inherited the rights of the subsubcontractor it paid, and sought to be reimbursed the $176,000 from the $545,524.44 that ALDOT had previously agreed to pay through the claims process. Id. at 1366. Specifically, the surety contended that if it had not paid the subsubcontractor, that the subsubcontractor "had a right to assert equitable liens and a constructive trust" on $176,000 of the $545,524.44.

In Boh Brothers, the surety did not step into the shoes of the higher tier contractor (as USF&G claims to in the instant case), but instead stepped into the shoes of the lower tier contractor (the equivalent of Anderson Columbia in the instant case). The surety in Boh Brothers was thus arguing that the party in the position of Anderson Columbia was the only party with any rights to the claim awarded through the ALDOT claims process. The Supreme Court of Alabama agreed with the surety that the subsubcontractor had a right to assert equitable liens and a constructive trust on $176,000 of the $545,524.44 claim funds. Id. By paying this claim, the surety inherited the subsubcontractor's rights and the subsubcontractor's rights were inviolate -- in the instant case, Anderson Columbia's rights are just as inviolate for the same reasons. Id.

Specifically, in Boh Brothers, the Supreme Court expressly held that the general contractor, upon receipt of the $545,524.44 of claim funds, would have been required to pass down the appropriate portion of the claim that was due to claims of lower tier subcontractors. Id. The fact that a higher tier subcontractor was unqualified to conduct business was immaterial to the lower tier subcontractor's rights to assert equitable liens and a constructive trust against its

7

portion of the claim fund resolved through the ALDOT claim process. In the instant case, Anderson Columbia possesses the same rights to recover its $203,243.95 under principles of equitable liens and constructive trust as the Alabama Supreme Court approved in Boh Brothers.[6]

A case from this Federal Circuit addressing these concepts is United Parcel Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005 (5th Cir. 1986). Weben Industries, Inc. ("Weben") was a general contractor that performed construction work for United Parcel Service, Inc. ("UPS"). Id. at 1010-1011. Weben assigned its accounts receivable to Mercantile Bank (the "Bank"). Id. When Weber failed to stay current on its obligations to the Bank, the Bank demanded that it had a right to be paid construction proceeds from UPS. Id. at 1006-1007. However, the monies to be paid by UPS to Weben included sums that were due to be paid by Weben to its subcontractor, Conveyor, Machinery & Steel Erectors, Inc ("CoMaster"). Id. at 1007. UPS deposited the disputed sums into the registry of the court. Id.

The Fifth Circuit held that the Bank had no right to the funds that were due to be paid to the subcontractor, CoMaster, because not even the general contractor, Weben, had any right to those funds. Under the "construction trust fund doctrine," the general contractor merely acts as a conduit for monies due to be paid from the owner to a subcontractor -- the general contractor itself has no properly interest in such monies. Thus, because the general contractor has no property interest in the money to be paid the subcontractor, it follows that creditors of the general contractor also cannot prevent the subcontractor from receiving its money.

---

[6]To be clear, in the instant case, USF&G has not contended, and there would be no grounds to contend, that it paid any claims arising from subsubcontractors or suppliers to Anderson Columbia. It is not disputed that Anderson Columbia paid all of its bills. USF&G does not stand in the shoes of any subsubcontractors or suppliers of Anderson Columbia, and does not so contend -- it only contends that it has a right to stand in the shoes of the general contractor, Reese & Howell.

The Fifth Circuit analyzed how courts throughout the country had addressed this context and concluded that while some states had expressly codified the construction trust fund doctrine, the same result was generally reached elsewhere under equitable principles and fairness.[7] The Fifth Circuit explained these cases as sensibly holding that because the general contractor has no property interest in monies paid by the owner for the subcontractor, creditors of the general contractor similarly have no rights to such funds:

> [T]he court in Fenton emphasized that the owner's obligation to pay the subcontractors effectively removes the money owing to the subcontractors from the general contractor's accounts receivable; since the general contractor has no valid claim to the money, the general contractor's creditors, secured or not, likewise may stake no claim. Id. at 863; see also Aquilino v. United States, 176 N.E.2d 826, 832 (NY 1961)("Our conclusion, then, is that. . . a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid.").

Id. at 1010.  Notably, in Aquilino, the Court ruled in favor of a subcontractor, and against a Federal Tax Lien, with regard to monies that had been deposited into the court by the owner. United Parcel, 794 F.2d at 1010; Aquilino, 176 N.E.2d at 282.7  The instant case is no different -- because Reese & Howell has never had any property interest in the $203,243.95 that is due to be paid to Anderson Columbia, USF&G also has no rights to these funds.

A case applying these principles in the context of a surety of a general contractor (i.e., USF&G) attempting to assert equitable subrogation rights against funds due a subcontractor (i.e., Anderson Columbia) is In re Esteves Excavation, Inc., 56 B.R. 802 (D. N.J. 1985).  In Esteves, as in the instant case, the general contractor defaulted and the surety was required to complete the contract and pay claims.  At the conclusion of the project the public owner (again like in the

---

[7] Id. *citing* Durham Lumber, 363 U.S. at 525; Keenan Pipe, 241 F.2d at 489; Mickelson, 452 F.2d at 1225; Selby, 590 F.2d at 648; Carrier Corp., 347 F.2d at 156; Cutler-Hammer, 101 F.2d at 825.

instant case) held funds that would have otherwise been paid to the general contractor. The surety of the general contractor argued that, because it had paid claims and completed the work, it was entitled to the funds under principles of equitable subrogation. The District Court rejected this argument with regard to $63,000 that was due to be paid by the defaulted general contractor to subcontractors for work the subcontractors had performed.

Specifically, the court found that a constructive trust was imposed upon the monies not yet paid to the general contractor for the benefit of the subcontractors who had earned the monies -- thus, the general contractor "had no legal or equitable interest in any portion of the $63,000, which sum was subject to the trust." Esteves, 56 B.R. at 803. Because the general contractor did not have any legal or equitable right to the money due to be paid to the subcontractor, the surety for the general contractor could not have any rights by standing in the shoes of the general contractor through principles of equitable subrogation: "for it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." Esteves, 56 B.R. at 804 *quoting* United States v. Munsey Trust Co., 332 U.S. 234, 242 (1947). The District Court continued by explaining that "[a]s the high court said in Munsey it is indeed 'elementary' that the surety has no better standing upon subrogation than its principal had beforehand." Id. Thus, the money held by the public owner was paid to the subcontractors who had earned it, just as Anderson Columbia should be paid the $203,243.95 that the ALDOT Claims Review Board found it to be due.

IV.     Conclusion.

USF&G's premise is that it stands in the shoes of Reese & Howell. However, Reese & Howell has no legal or equitable interest in or right to the $203,243.95 that is due to Anderson Columbia as a result of Anderson Columbia's idle asphalt plant claim. Thus, USF&G has no

claim or right to the $203,243.95, which much be paid to Anderson Columbia. With regard to the $203,243.95, the Motion should be Denied.

        Respectfully Submitted,

        /s/ Christopher T. McRae

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Electronic Filing to Mr. Jim R. Ippolito, Jr. and Mr. George R. Prescott, Jr., State of Alabama Department of Transportation, 1409 Coliseum Blvd., Montgomery, Alabama 36110, Mr. Jacob A. Fuller and Mr. James Doyle Fuller, Law Office of J. Doyle Fuller, 2851 Zelda Road, Montgomery, Alabama 36106, Mr. William E. Farrior, U.S. Department of Justice – Tax Division, P.O. Box 14198, Ben Franklin Station, Washington, DC 20044, Ms. Margaret J. McNeill, State of Alabama Department of Revenue, Post Office Box 32001, Montgomery, Alabama 36132, Mr. Thomas L. Selden and Ms. Lucile A. Ray, Starnes & Atchison, LLP, Post Office Box 598512, Birmingham, Alabama 35259, this **29th** day of July, 2010.

    /s/ Christopher T. McRae
Christopher T. McRae
Florida Bar No. 865982
David J. Metcalf
Florida Bar No. 871427
McRae & Metcalf, P.A.
2612 Centennial Place
Tallahassee, Florida 32308
Telephone (850) 386-8000
Facsimile (850) 386-8342

Attorneys for Anderson Columbia Co., Inc.