IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE McINNES, DIRECTOR, ALABAMA,<br>DEPARTMENT OF TRANSPORTATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-CV-01034-MEF |
| | ) | |
| REESE AND HOWELL, INC., et al. | ) | |
| | ) | |
| Defendants, | ) | |

**RESPONSE OF REESE & HOWELL TO THE MOTION FOR
SUMMARY JUDGMENT OF ANDERSON COLUMBIA (DOC 62)**

In its Motion, Anderson Columbia makes certain rather startling claims.

First, it takes the position that since the ALDOT appeals board considered the idle asphalt plant as a factor in the award to Reese & Howell, and established that amount of $203,243.95. Then Reese and Howell has 'no legal claims' to that portion of the award.

This argument is totally without merit.  In cases involving contract claims against State agencies, Alabama Supreme Court has held that subcontractors do not have standing.  *Lyons v River Road Construction Inc.*, 958 So2d 257, 264-265 (Ala. 2003).

The award at issue in this case was made by the ALDOT Appeals Board to Reese & Howell, not to Anderson Columbia.  (see Exhibit A attached hereto, previously submitted as a exhibit to Doc 33).  The last provision of that award is telling.

In summary the Claims Board recommends the following additional compensation as settlement of the Contractor's claim:

| | |
|---|---|
| Increased Winter Protection | 59181.92 |
| Profit (10%) | 5918.19 |

| | |
|---|---|
| Home Office Overhead | 158976.00 |
| Idle Asphalt Plant | 203243.95 |
| Administrative Allowance | 2432.44 |
| Gross Receipts Tax & Bond | <u>27431.01</u> |
| Total | 457183.51 |

Thus, it is clear the award was to the "contractor" Reese & Howell.

Furthermore, as noted by the Court in *C&C Excavating, Inc*., 288 B.R. 251 (N.D.Ala. 2002), a case relied upon heavily by Anderson Columbia, the rights of a subcontract are dependent upon the terms of its contract with the prime contractor. Anderson Columbia has not presented any evidence of the terms of its subcontract. Hence it fails to make its case.

The legal authorities relied upon by Anderson Columbia simply do not support its position. In *Re C&C Excavating*, 288 B.R. 251 (N.D.Ala 2003) is a bankruptcy case dealing with these issues of whether sums owed by general contractor to a subcontractor was part of the bankrupt estate or whether the general contractor could use these funds to pay sub-subcontractors and material men who had not been paid by the subcontractor. The Court simply ruled that since the subcontractor had not paid its subs, it was in breach and not entitled to the funds.

*National American Insurance Co., v Boh Brothers Constr. Co., Inc*. 700 So2d 1363 (Ala 1977) in like manner does not stand for the proposition that a subcontractor, such as Anderson Columbia, has any direct rights to an administrative award made by ALDOT. In *Boh*, the Court simply held that National American, the surety of Boh's subcontracts could sue Boh for the amount of the delay damages Boh was awarded. As in <u>Boh</u> if Anderson Columbia has a claim for delay damages, it must pursue the claim in a proper lawsuit against Reese & Howell. As in *Boh*, in this case Anderson Columbia was awarded nothing by the Appeals Board.

*United Parted Services, Inc. v Weber Industries, Inc.,* 794 F.2d 1005 (5th Cir. 1986) is another bankruptcy case. It is readily distinguishable however because in that case the

subcontractor had filed a lien for its unpaid invoices.  The issue was whether or not the owner of

the property had a right to discharge the lien and claims of the subcontractor out of returning

hold from payments to the contractor.  The Court held that the owner could do that.  Here

Anderson Columbia has presented no evidence that it filed a lien.

As to priorities in this case, as between Reese & Howell and Anderson Columbia, it

seems sufficient to say that, as explained above, Anderson Columbia has no claim to these funds,

hence there is no issue of priority.

Accordingly the Motion for Summary Judgment of Anderson Columbia should be

denied.

Respectfully submitted this the 29th day of July 2010.


/s/  J. Doyle Fuller
J. DOYLE FULLER

Of Counsel:
J. Doyle Fuller, Esq.
jdf@jdoylefuller.com
Jacob A. Fuller, Esq.
Jacob@jdoylefuller.com
J. Doyle Fuller, PC
2851 Zelda Road
Montgomery, AL 36106
(334) 270-0020

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this the 29th day of July 2010, electronically filed at which time a filed copy of same will be forwarded to the counsel of record as follows:

Jim R.  Ippolito, Jr., Esq.                      Margaret J. McNeil
Robert Prescott, Esq.                         Alabama Department of Revenue
Assistant Counsel                               50 North Ripley Street
State of Alabama Department of Transportation  Montgomery, AL 36132
1409 Coliseum Boulevard
Montgomery, AL 36110

Thomas L. Selden, Esq.                    David J. Metcalf, Esq.
Lucile A. Ray, Esq.                        Christopher T. McRae, Esq.
Starnes & Atchison, LLP                 McRae & Metcalf, P.A.
100 Brookwood Place, 7th Floor           2612 Centennial Place
P.O. Box 598512                           Tallahassee, Florida 32308
Birmingham, Alabama 35259-8512

William E. Farrior
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Ben Franklin Station
Washington, DC 20044-4198

/s/  J. Doyle Fuller
Of Counsel

May 26, 2004

Mr. D. J. McInnes
Transportation Director
Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama 36110

> Re:    Claims Appeal Board Hearing
>        Project No. NHF-128 (9)
>        Covington County

Dear Mr. McInnes:

A Claims Appeal Board Hearing was held on May 20, 2004 to hear the claim of the Contractor, Reese and Howell, Inc. for additional compensation on the above subject project. The contractor is requesting additional compensation in the total amount of $4,398,529.00 which he feels resulted due to a utility relocation delay and a redesign of a portion of the project by ALDOT after construction had begun.

As the project progressed the ALDOT addressed several requests by the Contractor for additional compensation related to the utility relocation delay and redesign of the project through the negotiation of Supplemental Agreements. The additional amount of compensation provided by these Supplemental Agreements totals $1,404,166.20. The Contractor feels that the additional compensation requested in his claim has not been covered in the previously negotiated Supplemental Agreements. The Items presented by the Contractor at the hearing and the recommendation of the Claims Appeal Board for each are as follows:

|   |   |   |   |
|---|---|---|---|
| A. | Extended Equipment Ownership Costs | $ 1,775,076 |
| B. | Extended Site Overhead Costs (non-equipment) | $ 564,339 |

The Contractor computed a daily cost for each of the above Items and applied this daily cost to the number of delay days he feels were the result of ALDOT actions. The Equipment Ownership costs were computed using the standby rate for the primary equipment utilized on the project. The site overhead costs consisted of monthly costs throughout the duration of the project (April, 1999-Nov., 2002). These monthly costs were used to compute a daily cost to apply to the delay days. No breakdown of the monies included in the monthly site overhead costs were provided by the Contractor.

The project progressed throughout the entire construction time of April, 1999-November 2002 with the exception of a time suspension period of December 10, 2000 through June 4, 2001. According to the ALDOT Project Engineer no equipment remained on the project during the suspension period.

Most of the Contractor computed delay days are based on an "as- planned" schedule included in the Contractor's claim as compared to an "as-built" schedule. The "as-planned" schedule included in the Contractor's claim differs substantially from the



Progress Schedule of Operations required by the ALDOT Specifications and furnished by the Contractor prior to the Pre-Construction conference for the project. For example. the completion date for the asphalt paving shown in the Progress Schedule of Operations required by the ALDOT was August 1, 2001. The completion date for asphalt paving shown in the "as-planned" schedule included in the Contractor's claim is September 10, 2000. The overall completion date for the project is shown as October 31, 2001 in the Contractor's Progress Schedule of Operations and October 30, 2000 in the "as-planned" schedule included in the Contractor's claim submittal.

Therefore the delay days computed by the Contractor utilizing the "as-planned" schedule in the claim would be considerably more than if compared to the Contractor's Progress Schedule of Operations.

It is the opinion of the Appeals Board that the ALDOT made a diligent effort to rectify all additional job-related costs through negotiated Supplemental Agreements. No mention was made to ALDOT by the Contractor of extended job site costs during these negotiations. We recommend that these Items of the claim be denied.

       **C.     Demobilization Due to Suspension of work - $ 97254**

In the revised unit prices for the redesign work, which was performed after the suspension period, ALDOT provided for Item No.600A, Mobilization in the amount of $97,254.00. Item No.600 includes the cost of moving and removing equipment and personnel for the project.

It is the opinion of the Appeals Board that the original contract Item for Mobilization and the Item of Mobilization included in the revised prices of the Supplemental Agreement adequately compensated the Contractor for moving and removing equipment and personnel for the project.

       **D.     Increased Winter Protection     $ 59182.**

After the hearing by the ALDOT Claims Committee, the Contractor furnished appropriate documentation to support the amount of $ 59181.92.

The Claims Appeal Board concurs in the recommendation of the ALDOT Claims Committee for compensation in the amount of $ 59181.92 for this Item.

       **E.     Unabsorbed Home Office Overhead     $ 291,704**

An ALDOT audit of the Contractor's records has previously established a Home Office Overhead Rate of $ 414.00 per day.

The Contractor has requested 705 days of additional Home Office Overhead.

In September of 1999 the ALDOT advised the Contractor that there would be a redesign on the south end of the project at US 331. The revised drawings by ALDOT for this revision work were not furnished to the Contractor until November of 2000 approximately 14 months later. Negotiations for revised prices for the work were not completed until June, 2001. The redesign work, along with the remainder of the project, was completed on November 19, 2002.

The Contractor indicated a completion date of October 31, 2001 in his Schedule of Operations. which was submitted soon after contract letting. Therefore, the original contract bid should have included Home Office Overhead costs through October 31, 2001.

The Appeals Board recommends extended Home Office Overhead for the period of November 1, 2001 through November 19, 2002 or 384 days @ $ 414.00 per day for a total amount of $ 158976.00.

F.   Anderson Columbia Co. (Asphalt Subcontractor) $ 1,304,396

In the Supplemental Agreement for revised prices to perform the redesign work, the ALDOT did not provide any additional compensation for the asphalt items as they felt that there was no change in the nature of this work. The Subcontractor is requesting additional compensation for reduced production on the redesign work, additional fuel cost for performing work at a later date than anticipated in his bid and idle plant time while waiting on the availability of the redesigned section of the work.

The Contractor's Progress Schedule of Operations indicated that Asphalt Paving would be placed from October 1, 2000 through August, 2001 as a continuous operation. It is the opinion of the Appeals Board that the asphalt paving could have been performed during this time frame and as a continuous operation if the redesign drawings had been furnished to the Contractor in an expedious manner after ALDOT was aware of the change in September, 1999.

Asphalt Paving was placed from June, 2000 through November, 2000 when paving operations ceased. Negotiations for the revised unit prices for the redesign work were not completed until June 2001 and paving was resumed in November, 2001.

The Subcontractor stated at the hearing that the Asphalt Plant was moved to the Opp area primarily for this project. Production records furnished by the Subcontractor indicate this to be the case. Also, the Subcontractor stated that the Asphalt Plant was moved from the Opp area immediately after the completion of this project.

During the paving downtime of December, 2000 to November, 2001, the plant production records furnished by the Subcontractor indicate less than 900 Tons of production for December, 2000 and January, 2001; Zero production for June, July, August, September and October, 2001.

The Appeals Board found no basis for additional compensation for reduced production or increased fuel cost. However, the Appeals Board recommends additional compensation for the asphalt plant being idle for the 7 months listed above.

The Blue Book standby rate for the type asphalt plant furnished for use on this project is $ 29034.85 per month. Therefore, the recommended additional compensation is 7 months @ $ 29034.85 per month or a total amount of $ 203243.95.

In Summary the Claims Appeal Board recommends the following additional compensation as settlement of the Contractor's claim.

| | |
|---|---|
| Increased Winter Protection | 59181.92 |
| Profit (10%) | 5918.19 |
| Home Office Overhead | 158976.00 |
| Idle Asphalt Plant | 203243.95 |
| Administrative Allowance | 2432.44 |
| Gross Receipts Tax & Bond | 27431.01 |
| Total | 457183.51 |

The above recommendation of the Claims Appeal Board is submitted for your consideration of approval.

Recommended: _____, Chairman
Mitchell Kilpatrick

_____, Member
Robert Cumbee

_____, Member
Malcolm Risher

Approved: _____, Transportation
D. J. McInnes                    Director