UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE McINNES, DIRECTOR, ALABAMA   )
DEPARTMENT OF TRANSPORTATION,   )
           )
     Plaintiff,         )
           )
vs.           )     Case No:  2:09-cv-1034-MEF
           )
REESE AND HOWELL, LLC, et al.,   )
           )
     Defendants.      )

## UNITED STATES FIDELITY AND GUARANTY COMPANY'S RESPONSE IN OPPOSITION TO ANDERSON COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

COMES NOW UNITED STATES FIDELITY AND GUARANTY COMPANY ("USF&G"), one of the defendants herein, and for Response to the Motion for Summary Judgment filed by Anderson Columbia Co., Inc. ("Anderson Columbia") submits the following:

## I.  INTRODUCTION

In its Motion, Anderson Columbia seeks to recover, as a pass-through claim, a portion of certain sums awarded to Reese & Howell, LLC ("Reese & Howell") in 2004 by the Alabama Department of Transportation ("ALDOT").  Anderson Columbia's claim to these funds, which ALDOT has interpleaded in this action, is derivative of, and can be no better than, the claim of Reese & Howell.  If Reese & Howell has no right to the interpleaded monies, Anderson Columbia likewise can have no right.  As shown below, because Reese & Howell has no right or claim to these funds, given USF&G's equitable

{B1186230}

rights of subrogation, the assignment provisions of a Master Surety Agreement executed by Reese & Howell in USF&G's favor in 1995, and the execution of a separate Assignment by Reese & Howell in USF&G's favor in 2003, Anderson Columbia can have no claim to these funds.

For all the foregoing reasons, and as further shown below, Anderson Columbia's Motion for Summary Judgment is due to be denied.

## II. STATEMENT OF UNDISPUTED FACTS

1.      On February 13, 1995, Reese & Howell, one of the defendants herein, executed a Master Surety Agreement (hereinafter "MSA") in favor of USF&G pursuant to which it agreed to exonerate, indemnify and hold USF&G harmless from and against any claims, losses and expenses, including attorney's fees, incurred by reason of the issuance of any bonds on Reese & Howell's behalf.  (*See* MSA attached hereto as Exhibit "1," ¶ III(A).)  Reese & Howell further agreed, upon any breach or default in any contract bonded by USF&G, to assign any money awarded by the obligee(s) of the bond(s) to USF&G to the extent of its loss.  (*See* MSA, ¶ VI.)

2.      In or around March 1999, Reese and Howell entered into a contract with the ALDOT, as obligee, for the construction of a road in Opp, Covington County, Alabama (hereinafter "the Project").  (*See* Complaint in Interpleader, ¶ 1.)

3.      At Reese & Howell's request, and pursuant to the terms of the MSA, USF&G issued performance and payment bonds on behalf of Reese & Howell and in favor of ALDOT on the aforementioned Project.  (*See* Affidavit of Cynthia J. Kos ("Kos Affidavit"), ¶ 2, attached hereto as Exhibit "2.")

2

{B1186230}

4.     The construction contract provided that a certain percentage of the total contract price would be retained by ALDOT, held in an interest bearing account, and withheld from payment to Reese & Howell until construction of the Project was complete. (*See* Complaint in Interpleader, ¶ 4.)   The amount of retainage totaled $243,207.50.  (*Id*.)

5.     During the course of construction on the Project, a dispute arose between Reese & Howell and ALDOT concerning additional costs Reese & Howell claimed to have incurred due to construction delays caused by ALDOT.  (Kos Affidavit, ¶ 3.)  As a result, Reese & Howell retained J. Doyle Fuller ("Fuller"), one of the defendants herein, who initiated an administrative proceeding requesting additional compensation of more than $4 million in connection with the delays.  (*Id*. at ¶ 4.)

6.     Reese & Howell ultimately defaulted in the performance of its obligations in connection with the Project, resulting in the receipt by USF&G of numerous claims of non-payment by subcontractors, materialmen, and laborers against the aforementioned payment bond.  (Kos Affidavit, ¶ 4.)

7.     After investigating these claims, USF&G discharged its obligations to the claimants in accordance with the terms of the bonds and applicable law.  The losses USF&G sustained with respect to its issuance of the subject bonds on behalf of Reese & Howell were in excess of $2 million.  (Kos Affidavit,  ¶ 4.)

8.     On September 26, 2003, Reese & Howell further executed an Assignment of Claim in favor of USF&G by which it expressly assigned and conveyed to USF&G *all* of its rights, title and interest in, and proceeds from, any and all claims arising in

{B1186230}

connection with the Project.  (*See* Assignment of Claim attached hereto as Exhibit "3.")

Specifically, Reese & Howell agreed as follows:

> In consideration of the issuance of the aforesaid bonds by USF&G and in accordance with the requirements of the Master Surety Agreement, Reese & Howell, for its officers, directors, attorneys, employees and assigns, is hereby assigned and conveyed unto USF&G, as surety, **all of its right, title, interest, and proceeds in any and all claims for delay, disruption, or other activity resulting in any entitlement to additional compensation with respect to the Covington County project, it being the intent of this Agreement that all interest of Reese & Howell in said claim is assigned to USF&G**.

(*See* Assignment of Claim, ¶ 1 (emphasis supplied).)

9.      In addition, Reese & Howell expressly agreed "to further prosecute said claim *at its sole cost and expense*."  (Assignment of Claim, ¶ 2 (emphasis supplied).)

10.     Reese & Howell also expressly reaffirmed its indemnity obligations to USF&G, including those provisions relating to assignment of claims and any amounts awarded by obligee(s), as set forth in the MSA.  (Assignment of Claim, ¶ 3.)   (*See also* MSA, ¶¶ III, VI.)

11.     Pursuant to the terms of the Assignment of Claim, as of September 26, 2003, *all* interest of Reese & Howell to any proceeds derived from its aforementioned claim against ALDOT in connection with the Project constituted the sole and exclusive property of USF&G.  (Assignment of Claim, ¶ 2.)

12.     In or about 2004, ALDOT, as obligee, determined that Reese & Howell was entitled to additional compensation in the amount of $457,183.51, of which $203,243.95 was attributed to Anderson Columbia's asphalt plant remaining idle for seven months.   (Complaint in Interpleader, ¶ 3.)  The disposition of the administrative

4

proceedings in turn freed $243,207.50 retained by ALDOT under the contract. (Complaint in Interpleader, ¶ 4.)

13.     On July 13, 2006, USF&G filed with the Alabama Secretary of State a UCC-1 Financing Statement covering the following collateral:

> All rights, title, interest, and proceeds in any and all claims for delay, disruption, or other activity resulting in any entitlement to additional compensation with respect to the Covington County Project known as Project #NHF-128(9) as set forth in the Assignment of Claim attached hereto as Exhibit "A".

(UCC-1 Financing Statement, attached hereto as Exhibit "4.")

14.     On November 8, 2006, USF&G obtained a judgment against Reese & Howell in the amount of $2,052,730.03 in the Circuit Court of Jefferson County, Alabama in Civil Action No. CV-2005-6602.  (*See* Consent Judgment and Certificate of Judgment attached hereto, respectively, as Exhibits "5" and "6.")

15.     On September 29, 2009, Joe McInnes, Director of ALDOT, filed a Complaint in Interpleader in the Circuit Court of Montgomery County, Alabama, instituting the instant action.  (*See* Complaint in Interpleader.)

16.     ALDOT previously deposited with the Clerk of Court for Montgomery County, Alabama funds to which multiple parties, including Fuller and USF&G, claim an interest.  (*See* Plaintiff's Response to Defendant Internal Revenue Service's Notice of Removal, ¶ 1, Doc. 10)

17.     On November 10, 2009, the Internal Revenue Service removed this action to this Court.  (*See* Notice of Removal, ¶1, Doc. 3.)

{B1186230}

18.     ALDOT filed an Amended Complaint in Interpleader on April 20, 2010 along with a separate Motion to Interplead Funds requesting permission to place the disputed contract funds on deposit with the Clerk of this Court pending an Order determining distribution of same.  (Amended Complaint in Interpleader, Doc. 45; Motion to Interplead Funds, Doc. 47.)

19.     The Court granted ALDOT's Motion the same day, April 20, 2010, and instructed ALDOT to pay the funds at issue to the Clerk of Court for deposit into the Court's commercial registry.  (Order, Doc. 48.)

20.     On July 1, 2010, Anderson Columbia filed its Motion for Summary Judgment currently pending before the Court seeking the $203,243.95 that was attributed to Anderson Columbia's asphalt plant remaining idle for seven months.  (*See* Anderson Columbia's Motion for Summary Judgment, Doc. 62.)

21.     On July 23, USF&G and the Internal Revenue Service, as the United States of America, filed a Stipulation of Priority stipulating that USF&G holds a secured interest in the interpleaded funds that is superior to the federal tax liens against Reese & Howell, and that USF&G's prior security interest exceeds the amount of the interpleaded funds. (Stipulation of Priority, July 23, 2010, Doc. 65.)

### III.  <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

{B1186230}

the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Flava Works, Inc. v. City of Miami*, No. 09-11264, 2010 WL 2539759, at *2 (11th Cir. June 25, 2010).  The party asking for summary judgment always bears the initial responsibility of informing the Court of the basis of its Motion and identifying those portions of the pleadings or filing which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met this burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250 (citations omitted). "Conclusory allegations or evidence setting forth legal conclusions are insufficient" to meet that burden. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). The nonmoving party must "go beyond the pleadings and . . . ' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324. Therefore, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010).

7

{B1186230}

## IV.  DISCUSSION

**A.     USF&G has a prior and superior right to the contract proceeds, including the $203,243.95 Anderson Columbia claims in this action.**

Pursuant to principles of equitable subrogation, USF&G, as a performing surety, has a prior and superior right to the contract proceeds interpleaded in this action, including the $203,243.95 claimed by Anderson Columbia.  *See, e.g., Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 (1962); *Fid. & Cas. Co. of New York v. Cent. Bank of Birmingham*, 409 So. 2d 788 (Ala. 1982); *First Alabama Bank of Birmingham v. Hartford Accident & Indem. Co.*, 430 F. Supp. 907 (N.D. Ala. 1977); *Alabama ex. rel. Gallion v. Bessemer Materials, Inc.*, 224 F. Supp. 182 (N.D. Ala. 1963).  *See also Int'l Fid. Ins. Co. v. United States*, 949 F.2d 1042 (8th Cir. 1991); *Amwest Sur. Ins. Co. v. United States*, 870 F. Supp. 432, 433-34 (D. Conn. 1994).

USF&G's rights arose in 1995 when Reese & Howell executed the MSA in USF&G's favor.  As noted above, in or around March 1999, Reese & Howell entered into a contract with ALDOT for the construction of the Project.  (Complaint in Interpleader, ¶ 1.)  At Reese & Howell's request, and pursuant to the terms of the MSA, USF&G issued performance and payment bonds on behalf of Reese & Howell and in favor of ALDOT on the Project.  (Kos Affidavit, ¶ 2.)   Reese & Howell ultimately defaulted in the performance of its obligations on the Project, thereby triggering USF&G's obligations under the bonds and corresponding rights under the MSA, including the assignment and indemnification provisions.   (Kos Affidavit, ¶ 4.)  The losses USF&G sustained with

8

{B1186230}

respect to its issuance of the subject bonds on behalf of Reese & Howell were in excess of $2 million.  (Kos Affidavit, ¶ 4.)

**1.    USF&G is entitled to the funds pursuant to its equitable rights of subrogation.**

USF&G's equitable and common law rights of subrogation to the contract proceeds at issue materialized upon Reese & Howell's default.  *Amwest*, 870 F. Supp. at 433.  As the Court in *Amwest* articulated, "[w]hen a surety performs its obligations under a . . . bond, it stands in the shoes of the contractor.  Thus, if the contractor has the right to the retained funds, the surety accedes to those rights when it meets its obligations under the bonds."  *Id.* at 433 (citations omitted).  Although USF&G's right to the contract proceeds was not fully formed until certain conditions precedent were met, the time at which the claimants' rights attached is irrelevant for purposes of determining priority, because USF&G's interest arose "by operation of law."  *See id.* at 433-34; *Fidelity & Cas. Co.*, 409 So. 2d at 790 ("[S]ince the surety's equitable subrogation rights, upon default of its principle contractor, arise by operation of law rather than by contract, [the subcontractor's creditor's] argument for the application of the 'first in time, first in right' rule is not well taken.").

When Reese & Howell defaulted, USF&G took over and completed performance of the contract and paid various unpaid claims of subcontractors, laborers, and materialmen on the Project.  (Kos Affidavit,  ¶ 4.)  At that point, USF&G gained a secured and superior interest in all remaining sums due under the construction contract up to the amount USF&G was caused to expend.  *See Gallion*, 224 F. Supp. at 183.  Stated

{B1186230}

differently, USF&G obtained a priority interest with respect to all monies due under the contract up to the amount USF&G expended in discharging its obligations under the bonds.[1]

In 2004, ALDOT's Claims Appeal Board determined that Reese & Howell was entitled to additional compensation, including the $203,243.95 at issue. (Complaint in Interpleader, ¶ 3.) However, by the time the Claims Appeal Board made its recommendations, USF&G's expenditures under the bonds issued on Reese & Howell's behalf greatly exceeded the amount of money found to be due under the contract, including the additional compensation and the $203,243.95 at issue. (*See* Stipulation of Priority, July 23, 2010.) As a result, even though the $203,243.95 at issue was included in the sums awarded by the Claims Appeal Board to Reese & Howell under the contract, it was subject to USF&G's prior and superior right to these funds. Therefore, USF&G owned the entire amount found to be due under the contract, and Reese & Howell had no right to these contract funds upon which any liens asserted by claimants, such as Anderson Columbia, could attach. *Gallion*, 224 F. Supp. at 183. This conclusion is reinforced by the fact that even the Internal Revenue Service, one of Reese & Howell's creditors, has conceded that USF&G holds a secured interest in the interpleaded funds

---

[1] USF&G was not a party to Reese & Howell's hearing before the Claims Appeal Board. There is no indication that the Claims Appeal Board was aware of USF&G's superior interest in the funds that the Board recommended be awarded to Reese & Howell, nor did the Board make any findings in this regard. In short, the Board's recommendations, vis-à-vis USF&G's priority claim herein, are of no probative value.

{B1186230}

that is superior to the Federal tax liens against Reese & Howell.[2]  (Stipulation of Priority, July 23, 2010.)

## 2.  The amounts awarded by ALDOT belong to USF&G pursuant to the assignment provisions of the MSA.

The surety's rights are further reinforced by the terms of the MSA, pursuant to which Reese & Howell expressly assigned to USF&G all claims against any obligee, such as ALDOT herein, and any amounts awarded by such obligee.  (*See* MSA, ¶ VI). Similar contracts of indemnity containing assignment provisions relating to losses incurred by sureties have been uniformly upheld and enforced in accordance with their terms in Alabama and in other jurisdictions. *See Frontier Ins. Co. v. Int'l, Inc.*, 124 F. Supp. 2d 1211, 1213 (N.D. Ala. 2000) (noting that "most courts addressing the issue have sustained and upheld indemnity agreements similar to the one at issue in this case"); *Elmore v. Morrison Assurance Co.*, 502 So. 2d 378 (Ala. 1987); *Fid. & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); *Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*, 558 F.2d 948, 953 (9th Cir. 1977); *Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362-63 (6th Cir. 1968); *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967); *Am. Sur. Co. of New York v. Inmon*, 187 F.2d 784, 786 (5th Cir. 1951); *United States Fid. & Guar. Co. v. Jones*, 87 F.2d 346, 348 (5th Cir. 1937); *Carroll v. Nat'l Sur. Co.*, 24 F.2d 268, 270-71 (D.C.Cir.

---

[2] Anderson Columbia relies on *United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005 (5th Cir. 1986) and *Aquilino v. United States*, 176 N.E.2d 826 (N.Y. 1961) for its argument that USF&G does not have rights to the funds at issue.  However, the fact that USF&G has a prior right superior to the asserted rights of all other claimants is not affected by these cases because these cases deal only with creditors of the general contractor, such as the Internal Revenue Service with federal tax liens, over which USF&G's interest has priority.  *See id.*; (Stipulation of Priority, July 21, 2010.)

1928); *Am. Ins. Co. v. Gilbert*, 319 F. Supp. 1315 (E.D. Mo. 1970); *Nat'l Sur. Corp. v. Peoples Milling Co.*, 57 F. Supp. 281, 282-83 (W.D.Ky.1944); *Martin v. Lyons*, 558 P.2d 1063, 1066 (Idaho 1977); *Cent. Sur. & Ins. Corp. v. Martin*, 224 S.W.2d 773, 779 (Tex. Civ. App. 1949). Given the foregoing, the amounts awarded by ALDOT, as obligee, should be paid to USF&G, and Anderson Columbia is entitled to nothing.

**3. Reese & Howell expressly assigned to USF&G all rights and claims on any bonded contract.**

Furthermore, as noted above, Reese & Howell executed an Assignment of Claim in favor of USF&G on September 26, 2003. (*See* Assignment of Claim attached hereto as Exhibit "3.") Pursuant to this Assignment, Reese & Howell expressly assigned and conveyed to USF&G *all* of its rights, title and interest in, and proceeds from, any and all claims arising in connection with the Project. (*Id.*) This Assignment of Claim pre-dates the Claims Appeal Board's opinion in 2004, in which ALDOT determined that Reese & Howell was entitled to additional compensation, including the $203,243.95 at issue. (Complaint in Interpleader, ¶ 3.) In light of the Assignment, the effect of the Claims Appeal Board's 2004 recommendations is to award these monies to USF&G. Therefore, not only does USF&G have a secured interest in all remaining sums due under the contract up to the amount of its expenditures, pursuant to the recognized principles of equitable subrogation cited above, as well as the terms of the MSA, USF&G also owns all rights and interest in the additional compensation awarded to Reese & Howell by the Claims Appeal Board in 2004 by virtue of Reese & Howell's express assignment of this claim to USF&G.

12

{B1186230}

Because Anderson Columbia's claim to the $203,243.95 at issue flows solely from Reese & Howell's interest in the money, Anderson Columbia's claim is only as good as Reese & Howell's interest in the money.  Therefore, if Reese & Howell takes nothing due to principles of equitable subrogation, the provisions of the MSA, and the express terms of the Assignment executed in USF&G's favor well before the recommendations were made by the Claims Appeal Board, then Anderson Columbia, likewise, gets nothing. Simply put, USF&G's secured interest in the $203,243.95 at issue takes priority over any interest in the funds that Anderson Columbia claims herein.

**B.    Anderson Columbia's asserted legal precedent does not support its claim that USF&G has no rights to the funds at issue.**

In its Motion for Summary Judgment, Anderson Columbia relies on *In re C&C Excavating, Inc.* to support its claim that Reese & Howell and USF&G have no rights to the funds at issue.  288 B.R. 251 (Bankr. N.D. Ala. 2002); (Anderson Columbia Motion for Summary Judgment, p. 4.)  However, Anderson Columbia's assessment of the court's holding is incorrect.

In *C&C Excavating, Inc.*, the general contractor owed contract funds to its subcontractor.   The terms of the contract between the two mandated that the subcontractor must pay its sub-subcontractors.  The subcontractor, however, failed to pay its sub-subcontractors, breaching its contract with the general contractor.  *Because of the breach of contract*, the court held the subcontractor had no legal or equitable rights in the contract balance.  *Id.* at 258.  In reaching this conclusion, the court pointed out:

> [I]n Alabama, one who fails to perform the requirements of a contract is not entitled to the benefits of said contract . . . .  It is beyond dispute that the

13

> Debtor [subcontractor] has breached the terms of the Contracts in its failure
> and refusal to pay the Sub-subcontractors.  Thus, **pursuant to the terms
> of the Contracts**, [the general contractor] has the **right to** withhold the Funds
> and **pay them directly to the Sub-subcontractors** . . . . [the general
> contractor] is **authorized to pay the Sub-subcontractors directly**.

*Id.* at 258-63 (emphasis added).  After concluding that no other claims would have

priority over the funds,[3] the court merely upheld the terms of the contract that *allowed* or

*authorized* the general contractor to pay the sub-subcontractors directly if the

subcontractor failed to do so.  *Id.*  The court did not say the money *must* be paid to the

sub-subcontractors, as Anderson Columbia asserts.  *See id.*; (Anderson Columbia Motion

for Summary Judgment, p. 4.)

Anderson Columbia has also misstated the law with respect to the court's

reasoning.  Nowhere in the opinion does the court articulate that "because the bankrupt

general contractor[4] was always obligated to pass these funds along to its subcontractor, it

had no legal or equitable rights of its own over the money earned by the subcontractor,"

as Anderson Columbia asserts.  *See C&C Excavating, Inc.*, 288 B.R. at 258-63;

(Anderson Columbia Motion for Summary Judgment, p. 4.)  The court did not use this

reasoning.  In fact, the court said the subcontractor had "no legal or equitable rights in the

Contract balance . . . as a result of the [subcontractors] breach of the Contracts," *not*

---

[3] In order for the court to pronounce that the general contractor could pay the sub-subcontractors directly, it had to ensure there would be funds left after other claims with priority were applied.  For this reason, the court had to address whether the funds were part of the subcontractor's bankruptcy estate subject to claims of subcontractor's creditors, who might have had interests that took priority over the sub-subcontractor's payment, potentially leaving no funds for the general contractor to disperse to the sub-subcontractors.

[4] In its Motion for Summary Judgment, Anderson Columbia misidentified the parties in *In re C&C Excavating, Inc.*, 288 B.R. 251 (Bankr. N.D. Ala. 2002).  The bankrupt general contractor, to whom Anderson Columbia refers, was actually a subcontractor; and, the subcontractors, to whom Anderson Columbia refers, was actually the sub-subcontractor.  *Id.*

{B1186230}

because the subcontractor was obligated to pass the funds to its sub-subcontractor as Anderson Columbia claims. *Id.* at 258. *C&C Excavating, Inc.* simply does not support Anderson Columbia's claim that "Reese & Howell always had the obligation to pass along the $203,243.95 to Anderson Columbia, and [Reese & Howell] has no legal or equitable rights of its own over this money." *See C&C Excavating, Inc.*, 288 B.R. at 258-63; (Anderson Columbia Motion for Summary Judgment, p. 5.)

1.   **The "mere conduit" rule asserted by Anderson Columbia does not apply to this case.**

Anderson Columbia claims Reese & Howell is a "mere conduit" whose only role is to deliver money due from ALDOT to Anderson Columbia when Reese & Howell has no rights or interests in the funds. Under this "mere conduit" rule, Anderson Columbia argues that the funds at issue were held in a "constructive trust" solely for Anderson Columbia, and were not subject to claims by Reese & Howell's creditors. (Anderson Columbia Motion for Summary Judgment, p. 6.)

First, Alabama has not adopted or addressed the "mere conduit" rule in this context; thus, it should not be applied in this case.[5] Second, USF&G is not a creditor; it is a surety whose interest, unlike a creditor's, was secured "by operation of law" before any interest of Anderson Columbia ever attached. *See Fidelity & Cas. Co.*, 409 So. 2d at 790. Third, while it is arguably true that "but for the damages suffered by Anderson Columbia, the amount ALDOT would now be paying would be reduced by $203,243.95,"

---

[5] Notably, in all the cases Anderson Columbia cites in support of this argument, it included only one Alabama case and one Eleventh Circuit case (a 1939 Fifth Circuit case that became Eleventh Circuit law in 1981), neither of which applies the "mere conduit" rule or supports Anderson Columbia's assertion that, under the facts here, USF&G did not acquire *any* legal or property rights on the disputed amount. *See Nat'l Am. Ins. Co. v. Boh Brothers Constr. Co.*, 700 So. 2d 1363 (Ala. 1997); *Culter-Hammer, Inc. v. Wayne*, 101 F.2d 823 (5th 1939).

{B1186230}

Anderson Columbia's reliance on this conclusion is misplaced, because the reduction of ALDOT's payment under the contract does not affect the amount USF&G expended in discharging its obligations under the bonds.

Furthermore, Anderson Columbia incorrectly asserts that the Eleventh Circuit addressed the concept of the "mere conduit" rule in *United Parcel Service, Inc. v. Weben Industries, Inc.*, 794 F.2d 1005 (5th Cir. 1986). As this Court is aware, the Eleventh Circuit split from the Fifth Circuit in 1981 and adopted the Fifth Circuit's law prior to, but not after, September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981). Since the Fifth Circuit decided *United Parcel Service, Inc.* after that date, this case was not "from this Federal Circuit" as Anderson Columbia states in its Motion. *See id.* at 1207. (Anderson Columbia Motion for Summary Judgment, p. 8.) Even if applied, *United Parcel Service, Inc.* does not address the issue where a surety has a priority interest in the funds. 794 F.2d at 1005.

## C.   Anderson Columbia has no rights to the $203,243.95 it claims in this action.

Anderson Columbia also argues it has a right to the $203,243.95 at issue because the Claims Appeal Board intended this amount to be paid to Anderson Columbia. But nothing in the Claims Appeal Board's opinion recommending an award of additional compensation to Reese & Howell shows it "clearly intended Anderson Columbia to be made whole by the payment of $203,243.95 from ALDOT." (Anderson Columbia Motion for Summary Judgment, p. 6.) In its opinion, the Claims Appeal Board merely recommended that additional compensation be paid to Reese & Howell, some of which was attributable to Anderson Columbia's asphalt plant remaining idle for seven months.

16

(Claims Appeal Board Opinion, May 26, 2004.)  The recommended award, however, was to "the Contractor," that is, Reese & Howell, *not* Anderson Columbia.

In fact, Anderson Columbia could have pursued a claim against the payment bond issued by USF&G in order to recoup the money it now claims in this case.  *See, e.g., Nat'l Am. Ins. Co. v. Boh Brothers Constr. Co.*, 700 So. 2d 1363 (1997).  Anderson Columbia, however, has never acted to do so.  Given that the project is long since over, any claim asserted now would be outside the applicable statute of limitations and time-prohibited.[6]  *See* Ala. Code § 39-1-1 (1975).  In essence, Anderson Columbia is trying to backdoor a claim against USF&G that is clearly time-barred.  Anderson Columbia did nothing to pursue its claim for years, but chose instead to rely on the Claims Appeal Board's recommendations to award Reese & Howell additional compensation.  This recommendation, however, cannot be used to create a claim that was never made against the surety, and thereby deprive USF&G of its priority right to the funds at issue.

---

[6] The applicable statute of limitations for Anderson Columbia's claim against USF&G for the $203,243.95 at issue is provided by ALA. CODE § 39-1-1(b), which mandates a one year statute of limitations:

> Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work and payment has not been made may institute a civil action upon the payment bond and have their rights and claims adjudicated in a civil action and judgment entered thereon. Notwithstanding the foregoing, a civil action shall not be instituted on the bond until 45 days after written notice to the surety of the amount claimed to be due and the nature of the claim.  The civil action shall be commenced not later than one year from the date of final settlement of the contract.

Here, the date of the final settlement of the contract occurred years ago, and Anderson Columbia never sent written notice to USF&G of its claim and never filed suit against USF&G to seek recovery under the payment bond.  At this point, the statute of limitations set forth in ALA. CODE § 39-1-1(b) bars Anderson Columbia from bringing any payment bond claim.

17

## IV.  <u>CONCLUSION</u>

As a surety, USF&G has a prior and superior right to the contract proceeds interpleaded by the State of Alabama, including the $203,243.95 claimed by Anderson Columbia.   Thus, USF&G respectfully requests that the Court award none of the $203,243.95 interpleaded funds to Anderson Columbia.

WHEREFORE, PREMISES CONSIDERED, USF&G respectfully requests that Anderson Columbia's Motion for Summary Judgment be denied.

> Respectfully Submitted,
>
> s/Thomas L. Selden
> Thomas L. Selden
> ASB-5928-E64T
> Starnes & Atchison LLP
> 100 Brookwood Place, 7th Floor
> P.O. Box 598512
> Birmingham, Alabama 35259-8512
> Telephone: (205) 868-6000
> Fax: (205) 868-6099
> E-mail: tls@starneslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Robert Prescott, Jr., Esq.
Jimmie Robert Ippolito, Jr., Esq.
Alabama Department of Transportation – Legal Bureau
1409 Coliseum Boulevard, Room K101
Montgomery, AL 36110

Jacob A. Fuller, Esq.
James Doyle Fuller, Esq.
J. Doyle Fuller, P.C.

{B1186230}

2851 Zelda Road
Montgomery, AL  36106

Margaret Johnson McNeill, Esq.
P.O. Box 32001
Montgomery, AL 36132

William E. Farrior, Esq.
U.S. Department of Justice
Tax Division
P.O. Box 14198
Ben Franklin Station
Washington, DC 20044

Chris McRae, Esq.
David J. Metcalf, Esq.
McRae & Metcalf, P.A.
2612 Centennial Place
Tallahassee, Florida 32308

                                        s/Thomas L. Selden
                                        OF COUNSEL

{B1186230}